# Jackson *v.* The State.

### *Assault with Intent to Murder.*

1. *Act of December 31, 1868; effect of.*—The effect of the act of December 31, 1868, enacting that the provisions of "an ordinance relative to marriages between freedmen and freedwomen" should be extended to the 13th day of July, 1869, was to provide that freedmen and freedwomen who were living together as husband and wife at the date of the act, and continued to do so until the 13th day of July, 1869, were to be considered as lawfully married.

2. *Witness; competency of.*—Where a freedman and freedwoman were living together as husband and wife on the 31st of December, 1868, and continuously afterwards until 1875; neither of them is a competent witness against the other, upon a trial for an offense committed upon a third person.

3. *Same; duty of judge as to.*—Where a witness, in a criminal case, is objected to on the ground that she is the defendant's wife, it is improper to allow her to testify, and then instruct the jury to disregard her testimony, if from the evidence they found she was the defendant's wife. The presiding judge must determine the competency of witnesses.

APPEAL from Mobile City Court.

Tried before Hon. O. J. SEMMES.

The appellant was indicted for an assault, with intent to murder, upon one Benjamin Evans, in June, 1875. On the trial, the State offered to introduce one Jane Jackson, or Evans, to which the accused objected, on the ground that she was his wife. The evidence on the *voir dire* showed the following facts: At some time since the war, but prior to the 31st of December, 1868, defendant and Jane had commenced to live together as man and wife, and had continued to do so up to within four or five weeks of the time of the alleged assault. No marriage ceremony had ever been performed.

Upon this state of facts the court permitted the witness to testify, and then charged the jury, "unless they believed from the evidence that the defendant and Jane were living together as man and wife during the time of slavery, and continued to live together until November 30th, 1867, they were not man and wife." An exception was reserved to this charge, and it is now assigned as error, together with the action of the court in permitting the witness to testify.

ANDERSON, for appellant.

[*Jackson v. The State.*]
JOHN W. A. SANFORD, Att'y Gen., *contra.*

MANNING, J.—By an act approved December 31st, 1868, it was enacted "that the provisions of an ordinance passed November 30th, 1867, and No. 23, be and the same are hereby extended until the 13th day of July, 1869, any law to the contrary notwithstanding." The reference made in this act is to "an ordinance relative to marriages between freedmen and freedwomen," on page 175 of the Acts of 1868 ; the first section of which is in part as follows : "All such freedmen and women who shall now be living together as man and wife shall be regarded in law as man and wife," &c. And the second section provided, "that all prosecutions for bigamy, adultery and fornication, instituted against any person or persons who have by mutual consent dissolved such connection, and afterward married another person, shall be null and void."

It is not necessary to decide whether the act first above recited, of the legislature of 1868, was meant to allow persons who were then husbands and wives to each other the privilege of changing partners till the 13th day of July, 1869. But we decide that it was thereby enacted that any freedman and freedwoman who were at the date of the act living together as husband and wife, and continued thereafter to do so until after the date of July 13th, 1869, should be considered as lawfully married to each other.

The judge of the city court was in error in holding that they only were embraced within the provisions of the law who, while in a state of slavery, were living together as if married, and afterwards continued to do so. The preamble to the "ordinance" referred to in the act did not qualify the language of the sections following it. It only assigned a reason for the adoption of the provisions therein.

The evidence in this case showed that the witness called Jane Jackson, or Jane Evans, was living with the defendant, Frank Jackson, as his wife, and he with her as her husband, before the 31st day of December, 1868, and continuously afterwards until 1875. She was, therefore, his lawful wife, and ought not to have been permitted to testify at all in the cause.

The rule which excluded her as a witness is adopted in order to preserve the peace of families, as well as to exempt a wife from the great temptation arising thence to testify falsely. The reason of the rule, it will be perceived, should therefore operate to prevent such a witness from testifying at all to the jury. The evil to be obviated is not prevented

by compelling or allowing a person so situated to testify to the jury, and then instructing the jury, if from the evidence they found that she was the wife of the defendant, they should disregard the evidence. It is the duty of the judge to decide as to the competency and upon the right of the proposed witness to give any testimony.

Judgment reversed and cause remanded.